The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good morning. The Court is taking up Case No. 4240797, National Spiritualist Association of Churches, Inc. v. Cherry Valley Spiritualist Camp Association, Inc. Counsel for the appellant, if you'll please state your name for the record. My name is Christopher Lund. Counsel for the appellee, if you'll please state your name for the record. My name is Whitney Leifheit. Counsel for the appellant, you may proceed with your argument. Thank you, Your Honor. My name is Christopher Lund. I'm here from Dalton & Tomick on behalf of the appellant, National Spiritualist Association of Churches. May it please the Court. Almost 100 years ago, in 1926, Cherry Valley became part of NSAC. NSAC is a hierarchical religious organization. It's not a set of like-minded congregations who merely affiliate with each other. It's not a convention like the Southern Baptist Convention. It's a hierarchical church where units become part of an indivisible whole, like the Catholic Church. Under NSAC's bylaws, which Cherry Valley agreed to when it joined, if Cherry Valley were to become dispersed or defunct, Cherry Valley would surrender its assets, record, and charter to NSAC. Cherry Valley became defunct in September 2021 when it surrendered its charter, but Cherry Valley didn't surrender its records or its assets as the bylaws required. Cherry Valley's claim is that it wasn't really defunct, but that defense fails, we think. First, courts can't second-guess a hierarchical church's understanding of its own bylaws. NSAC concluded that Cherry Valley was defunct. You said this was, you conceded below that this was not a hierarchical ecclesiastical issue. I don't think so, Your Honor. You know, this is in the record, C-198-199. The district court said this, where a church decision implicates discipline, faith, or ecclesiastical rule, customer law. That's what the trial court said. That's not what you said. Well, Your Honor, I'm not sure about that. The first paragraph in our complaint discusses how we're a hierarchical church, and the issue for waiver, I think, from the Rockford case involves situations, I'm reading from the court now, involves situations where an entirely new legal argument was presented for the first time on appeal. The trial court considered the argument, was raised in our briefs to this court, Cherry Valley has notice of it, and we believe that's all Illinois law requires. But, Your Honor, one other thing, even if our arguments for deference are not accepted, right, we would still think that reverse and remand is warranted. The district court ruled that Cherry Valley was not defunct, but with due respect, we think the district court erred on this. The district court said that Cherry Valley was not defunct because the Illinois Secretary of State reinstated Cherry Valley after administratively dissolving them. But whether Cherry Valley's defunct within the meaning of NSAC's bylaws just has nothing to do with Cherry Valley, whether it's administratively dissolved or reinstated. So NSAC's bylaws just have nothing to do with the Secretary of State determinations. So, you know, again, this case is up on a motion to dismiss. There hasn't been any factual development here, no discovery, no nothing. This court should reject the district court's interpretation of what defunct meant. And once that happens, there's really nothing left. There's no factual basis to conclude that Cherry Valley wasn't defunct. So even if this court decides against us on the deference question or decide Lutheran Church in Trinity Lutheran, the Assemblies of God Church in Clay, when Cherry Valley joined NSAC, they became part of it. Again, NSAC is not a group of like-minded, affiliated congregations that just associate with each other. It's a hierarchical church bound by a common set of beliefs and a common mission that Cherry Valley became part of. We think of it like a Catholic church, right? They can't leave. They're not trapped. And so if NSAC loses, we're losing too much of this argument. Mr. Lund, over the course of the last minute and a half or so, you've cut in and out with your internet service. And so we are missing a little bit of your argument there, if you wouldn't mind repeating that. And you're frozen, it appears now. Thank you. We don't have Mr. Lund back. I would ask the panel, we're at 1535 with the argument, if perhaps we should ask the attorneys to go to the waiting room. The bailiff has a couple of suggestions that may help Mr. Lund. He may need to turn off his video, but we'll put them in the waiting room for the moment, if that's okay with the panel. Sure. Okay, it looks like Mr. Lund's signed back on, so I can't communicate with him. Oh, I'm sorry, are you here? Okay, now he's in the waiting room, shown twice, Dave, so. They come back in, we're still recording. I'm sorry, Your Honor, I've switched computers. I apologize for the background not being part of this. Should I continue my argument, Your Honor? I'll ask my fellow panel members at this point to assist with the audio. We're agreeable with letting him proceed without his background, is that correct, under the circumstances? Sure, sure, yes. Thank you. I deeply apologize, Your Honor. Mr. Lund, I would suggest anything over the last minute, minute and a half, I think you may want to go over again, because it was cutting in and out, and we'll start back up with the remaining 15 minutes and 35 seconds. Thank you. Thank you. I believe I had responded to Your Honor's question about deference, if I was going to continue from that point. The District Court below held that Cherry Valley was not defunct, but with due respect, we think the District Court erred on this. The District Court said Cherry Valley was not defunct because the Illinois Secretary of State reinstated Cherry Valley after administratively dissolving them. But whether Cherry Valley is defunct within the meaning of NSAC's bylaws just has nothing to do with whether Cherry Valley is administratively dissolved or reinstated. NSAC's bylaws, we think, have nothing to do with Illinois Secretary of State determinations, and defunct isn't the same word as dissolved anyway. Again, this case is up on a motion to dismiss. There hasn't been a factual development here, no discovery. This court should reject the District Court's interpretation of the word defunct. And once that happens, there's nothing left. There's no factual basis to conclude that Cherry Valley was not defunct. And then we think the right conclusion becomes for this court to reverse and remand for further proceedings. So even if this court decides against us on the question of deference or decides that our case for deference is not yet sufficiently established, we believe we should win this appeal. Finally, if NSAC loses this case, we believe it will undermine all kinds of religious denominations in this country, like the Lutheran Church in Trinity Lutheran or the Assemblies of God Church in Clay. When Cherry Valley joined NSAC, they became part of it. Again, we reiterate that NSAC's not a group of like-minded, independent congregations that merely associate with each other. It's a hierarchical church bound by a common set of beliefs and a common mission. Cherry Valley became part of it. You know, it can't leave in this way. It's like a Catholic parish that's part of the Catholic Church or a math department that's part of a private university. No one's trapped. Officers can quit. Members can leave. But Cherry Valley, the organization, is part of NSAC. That's part of what it means to belong to this hierarchical church. If Cherry Valley could leave and keep the property it manages, it could start up a different version of modern spiritualism, one competing with NSAC. If NSAC loses this, we believe it could happen to other hierarchical churches, which would be a terrible precedent, one we haven't seen, one that's inconsistent with the decided cases in governing law. I'm glad to answer questions, Your Honor, or I could, I have a brief conclusion if you prefer. I don't want to be overly persistent on this, but I've checked back, and there are two times, one time counsel is interrupted, where your counsel said there's no religious question before this court. In my view, this is a contract issue. You may still prevail, but continuing to refer to whether we should defer to the church continues to bring up the hierarchical and the ecclesiastical question, which is no longer present in this case. You chose not to argue that below. You don't get to go back and re-argue it on appeal. I don't have any other questions. Thank you, Your Honor. I understand that. I do think that the waiver issue, according to the cases that we've read, involves situations where an entirely new legal argument is raised on appeal, and we think, given that the trial court considered it, given that our briefs presented in this court, that it's sufficiently presented. But again, we would also urge, even if our arguments for deference are completely rejected, this still becomes an issue of fact. We believe the district court's conclusion about defunct was incorrect, and so this issue should go back to the trial court for factual development. We don't think that the district court's conclusion that defunct means what the Secretary of State says it means. Defunct doesn't mean the same word, isn't the same word as dissolved. Some of our charter units, we understand, aren't incorporated anyway, and so equating defunct with dissolved in the eyes of the Illinois Secretary of State doesn't make sense, we think. One last thing I'd like to raise. There have been benefits to this relationship between NSAC and Cherry Valley. It's existed for 100 years. We understand NSAC is a parent church, not just to Cherry Valley, but to many other units. There are benefits that accrue in this relationship to the local churches. NSAC has helped them acquire legal counsel, helped them and paid for it, have engaged in fundraising help with local units, provided them loans, other kinds of financial support. Local units, individual units have their tax exempt status through Cherry Valley. We also believe that there's particular help here that NSAC may have given to Cherry Valley. These things are not in the record, but we believe that further factual development would be very important. We don't know much about what's on the ground here. We believe that the camp was out of money by September 2021 and had stopped doing summer camps. That's not part of the record, but it is something that we believe. We don't know too much because communication was cut off. They returned their charter, but it's not clear exactly why they decided to return the charter at that point in time. We think something probably happened, but we don't know what it was. So again, we do believe that this court should defer to us on the question of defunct, but if not, you know, all the facts that bear on defunct otherwise would need to be established, and we believe a reverse and remand would be appropriate. So it's for these three reasons, the incorrectness of the district court's judgment, the deference we believe owed to NSAC, and the fact that there's been no factual development here, we believe the right course here is to reverse and remand for further proceedings. Thank you, Your Honors. Thank you, you both, time and rebuttal. And Counselor DiAppolite, your argument please. Thank you. May it please the court, my name is Whitney Leifheit of the law firm of Allison and Mosby Scott, and I represent the defendant Cherry Valley Spiritualist Camp Association in this matter. Your Honors, as opposing counsel stated, and I believe correctly, the key question in this case and the basis upon which the trial court reached its ruling in determining to dismiss the underlying lawsuit is whether or not Cherry Valley Camp was or was not and is or is not now defunct, as that term is used in Article 9, Section 9 of the Plaintiff's Bylaws. The reason why the plaintiff in this case or NSAC would like for Cherry Valley to be deemed to have been defunct is because pursuant to Article 9, Section 9 of the Plaintiff's Bylaws, I want to find that because it was not read into the record for clarity, under that section of the bylaws, quote, whenever a charter church society camp or auxiliary shall disperse or otherwise become defunct, its board of trustees through its secretary shall surrender its charter and records and all of its assets to the secretary of the NSAC to be held in trust for at least three years. So, if Cherry Valley is deemed defunct, then NSAC argues that it is entitled pursuant to this section of its bylaws to take ownership of Cherry Valley's property, which is namely comprised of approximately four acres of real property on which the camp currently sits and operates. We argue, and the trial court agreed, that Cherry Valley Camp was not, is not now, and was not then, and is not now defunct, and that absent satisfying this singular narrow criteria set out in this one provision of NSAC's bylaws, there is nothing that would entitle the plaintiff to seize upon its constituents' property. We disagree with that. If I may, just pausing you there for a moment, that conclusion seemed to be based on the not-for-profit corporation act, so that the court was essentially concluding that the act was applicable and really the word defunct turning solely on a determination by the Illinois Secretary of State. How is the court's conclusion, how does it support the plain and ordinary meaning of those bylaws to read that in? I don't think, when you say plain and ordinary meaning of the bylaws, Your Honor, respectfully, there is no definition for the term defunct that appears anywhere else in NSAC's bylaws. There's no meaning given to that word and it doesn't appear elsewhere, so we don't know what it means from NSAC's perspective. So, then if we use a dictionary meaning of that word, if you will, why though should the court take the extra step of saying that that also then is inferred to mean whether or not they're in good standing with the Illinois Secretary of State? I understand. So, we do address that, Your Honor, and I believe that in a purely technical legal sense, in fact, I don't think a corporation dissolution is not necessarily synonymous with becoming defunct. There's, I think, arguably within the general not-for-profit corporation act, a corporation can be deemed to exist for up to two years after it is dissolved for purposes of winding up its affairs. So, I think we can see that dissolution on its own does not necessarily equate to being defunct. However, the allegation that Cherry Valley Camp became defunct synonymous or contemporaneously with the disaffiliation or the surrender of its charter we do not think is also supported by the facts here. And a bare allegation of the complaint under Illinois pleading standards that is unsupported by facts is not deemed admitted for purposes of a motion to dismiss. So, we don't believe that it was improper for the trial court to pass judgment then on whether or not Cherry Valley was defunct as whether or not NSAC has any rights which can be acted upon really does depend on that question. Does that respond to your question, Your Honor? It does. Thank you. And we believe that the trial court reached its conclusion through a well-reasoned opinion in which it walks through the application of the neutral principles approach and it sets that out in quite a bit of detail. If that is discussed in a number of the cases, Jones v. Wolf, for example, the Supreme Court case declares that civil courts should utilize objective tenets of trust and property law in analyzing relevant documents. And most importantly, that doing so is not an infringement upon the First Amendment. So, here, if we look at the relevant documents, the record reflects that the deed to the real estate best title in the name of Cherry Valley and Cherry Valley alone, which we agree has not been dispositive in the cases that have been presented. But there are other relevant documents that we will look at, namely the bylaws and that the court examines, the trial court examined as well. Ostensibly, as I mentioned earlier, I think the sole basis for the plaintiff's claim among the documents of record is in that Article 9, Section 9 of the plaintiff's bylaws. The record also reflects that Cherry Valley voluntarily surrendered its charter to the plaintiff in September of 2021. I do want to clarify from a factual standpoint, and I don't know the details of this, but I don't believe that Cherry Valley has been chartered without interruption. There was a brief period of time, I believe it was around 2016, where there was a reissuance of the charter. I don't know, again, the factual circumstances surrounding that, but I don't believe that they have been chartered without interruption for 100 years, for example. It is also my understanding that spiritualist organizations and that joining with NSAC is a purely voluntary act. So you do not have to be a member of NSAC to be an operational spiritualist church or organization. They pay an application fee and they have to go through certain steps in order to apply for a charter because, as opposing counsel stated, presumably there are certain benefits to being a part of that national organization, but it is not required. At any rate, Cherry Valley, for whatever reason, voluntarily surrendered its charter to the plaintiff in September of 2021, four months before it was administratively dissolved by the Illinois Secretary of State in January of 2022, and was therefore no longer chartered when the initial board disbanded, which was supported by a letter that was attached to the complaint from Cherry Valley, which stated that the board disbanded in January of 2022. And in any event, we attach to our motion and the court took into consideration that Cherry Valley, in October of 2023, reinstated its corporate existence, which as a matter of law would, at least for the dissolution, nullify the previous dissolution under the General Not-for-Profit Corporation Act, and it would, in our opinion, essentially moot any dispute as to the original timeline of events. And because Cherry Valley is not defunct, but rather continues to exist now as if it had never dissolved, there are no rights for the plaintiff to act upon, and now that it has been reinstated, it essentially ratifies the previous voluntary surrender of the charter, regardless of what happened at that point. Excuse me, aren't you then saying by the reinstatement that the court, as a matter of law, could not find that it was defunct based on a determination of reinstatement by the Secretary of State? Aren't you making those synonymous under that argument? You were referring to dissolution and the act of reinstatement. But now you're saying... As being determinative in the issue of being defunct. I understand the question, Your Honor. I think that the issue in this case is that the facts would support that the actions which would go, which would be along with this dissolution, so the board disbanding other actions that would be part of that process, again, acknowledging that a corporation can continue to exist for a period of time after being dissolved from the Secretary of State's perspective. Any of those actions would have it is notable that the reinstatement, the actual legal reinstatement occurred before the filing of the lawsuit. So I think at this point, when it resumed activities, I don't think at this point there's anything to distinguish Cherry Valley Camp from any other organization that decides, that has been continuously active, that decides that it longer wishes to be a member of NSAC. How do we know that it's continuously active? How does the record know that? That it's operational now? Yes. Your Honor, that was not gone into other than the reestablishment of the Board of Directors at this point. There is a Board of Directors that is sitting over the camp. And they are. When I say do we know that, that means does the record know that? I do not believe there's anything in the record, Your Honor, apart from the articles of reinstatement. Thank you. The plaintiff contends, again, with what this question is of what it means to be defunct, that Cherry Valley Camp became defunct when it voluntarily surrendered its charter to the Board of Directors after 2021. It's our position that by this logic, anytime a chartered affiliate of NSAC decides that it no longer wishes to be a part of NSAC, that affiliate must also then surrender all of its assets to NSAC. And by consequence, would mean that the act of voluntary affiliation is akin to an unconditional surrender of asset ownership. And I believe that's a result that has been rejected multiple times by the court, including at least one prior case involving NSAC or some, the state historical form thereof, and which until its reply, the plaintiff has not seemed to be asserting that argument that affiliation is akin to a surrender of asset ownership. However, that record on page three of its reply, an opposing counsel brought it up now that they argue that for the first time, the bylaws they're arguing restrict the ability of the defendant or Valley to unilaterally dissociate from the plaintiff's organization. But there's no citation to any provision of the bylaws which would provide for such a penalty or a restriction. This conclusion is supported with emphasis on identifying the plaintiff or NSAC as a quote, hierarchical religious organization. But even if that's true, and that was acknowledged by the plaintiff's bylaws, does it state that application for membership is somehow presumed irrevocable as a result thereof? And again, nor is any provision cited by the plaintiff in the reply brief. I think if this were the case, I would ask why not challenge the propriety of the withdrawal of the now reactivated corporation? And one must also question that if disaffiliation is supposedly the triggering event for the rights of the plaintiff that the plaintiff now seeks to assert, why would they not use the word disaffiliation rather than defunct or to state that upon surrender of its charter that the organization is then required to turn over all of its assets to NSAC? As a practical matter, I think it's because that would seem to undermine this notion of voluntary association. And I think they would be likely to attract far fewer applications for membership if that were to be the agreement. So, and again, the trial court, this meeting of defunct and whether or not it matters, it matters very much. The trial court's order specifically identifies plaintiff as a hierarchical organization, but declined to find that the hierarchical nature of the organization automatically results in a finding in favor of the parent church. And that's not supported by the case law. The parent church in Jones versus Wolf, for example, was also expressly identified as a hierarchical church, yet the Supreme Court rejected, cited to, and then rejected the implied trust theory in favor of the neutral principles analysis, which was applied by the trial court in this case. So, in short, the hierarchical nature of the organization does not and should not have any bearing on the court's obligation to review the express language of documents as they would in any other case. The neutral principles approach here requires the court to examine the language of the relevant documents, such as the deeds, terms of the local charter, bylaws, or other governing document, rather than, again, assuming a finding in favor of the parent church. This is seen again in the York versus First Presbyterian Church of Anna case, for example, also dealing with the Presbyterian Church. I don't think there's any dispute from either party that the Presbyterian Church is a hierarchical church. Yet in that case, the court found that there was nothing discoverable from the record to support the parent church's right to take over the local church's property. And also notably in this, in that case, the court distinguished from the Anna Church's act of voting to withdraw from the parent church from dissolution or extinction, which were specifically mentioned in the governing documents, in that case, the Book of Order. And the court found those things to be different and said that voluntarily withdrawing is not the same thing as no longer functioning or becoming dissolved or becoming extinct, that those are legally distinguishable. And so in that case, the court ultimately awarded property to the local Anna Church. Both parties, as well as the trial court's order, cite to several cases wherein the very act, the issue of whether the very act of disaffiliating from a hierarchical body is the same as dissolution, including among them the Trinity Church case, which I mentioned earlier. It is an older case, but no less good law. Also dealing with NSAC, although this time I believe the state organizations, which I understand to previously have been the local arms of the national organization. But in that case, the court emphasized that the mere act of affiliating with a state or national organization on the part of a local church does not create or invest a property right in the court. And Trinity Church looked to the actual language of the Constitution as written and found that those, that the triggering event did not, had not occurred. So again, this brings me back to this concept of plain language. The term defunct is not defined or used anywhere in the plaintiff's bylaws. The plaintiff, I think, I would argue has waived the argument as to First Amendment deference, but they're trying to, in my view, sidestep the result of the trial court, arguing that essentially the court has to find that it is what NSAC says it is. Again, I think that they waived that issue when the court, they said that it did not require the court to resolve any issues, religious issues, and this is no different than the argument that was raised on the motion to dismiss. I don't think that there's anything here that requires the court to intrude into matters of church doctrine. I think, in my view, the First Amendment argument by plaintiff is essentially a backdoor promulgation of the implied trust theory, saying, you know, it is, again, it is what we say it is. Because we're a hierarchical church, we get to decide that for ourselves. And unlike organizations, other organizations, it doesn't have to define defunct anywhere or to carefully write out contract terms because it doesn't matter. That in agreeing to join NSAC, the other party to that agreement agrees that from that point forward, all of its property belongs to NSAC for the remainder of its existence, whether by losing its charter voluntarily or involuntarily or by choosing to dissolve its corporate existence or whatever event the NSAC decides in its sole and absolute discretion constitutes becoming defunct. The fact that Cherry Valley chose to surrender its charter and chooses to remain unchartered still does not render it defunct. On the contrary, Cherry Valley is an active corporation. The trial court properly applied the neutral principles analysis to conclude that outside of satisfying the express condition of the bylaws, there is no basis to find that NSAC had any vested right or interest in Cherry Valley's property and therefore is not entitled to declaratory judgment. For this reason, we respectfully request that this honorable court affirm the trial court's decision to dismiss the plaintiff's complaint. Thank you, counsel. Mr. Lunn, your rebuttal, please. Thank you, Your Honor. Even if this court rejects our claim for deference, then the question of whether Cherry Valley is defunct becomes a question of fact. The question becomes the plain and ordinary meaning. Whatever else is clear, we think the district court's determination about why Cherry Valley was not defunct cannot withhold scrutiny. Defunct is not the same word as dissolve. It's different decision makers. There's no evidence that NSAC or Cherry Valley ever intended this determination to be based on Illinois Secretary of State determinations. The determination that they were administratively reinstated means that they were essentially never dissolved. If the Illinois Secretary of State had taken no action in this case, it's hard to believe that the issue of whether they were defunct would have anything to do with Illinois Secretary of State determinations. Moreover, we believe the right interpretation of defunct applies in this case, that Cherry Valley indeed was defunct. When they surrendered their charter, they decided they would no longer be part of NSAC. They would no longer be advancing the missions of the church, that they would be, so far as NSAC is concerned, extinct, that they wouldn't belong to the organization anymore. We also believe that there's a strong case for deference here. Jones versus Wolf, it's true, established a neutral principles regime, which applies in Illinois. But even under neutral principles, hierarchical churches traditionally get deference on the interpretation of their own bylaws. This isn't the implied trust theory, right? We acknowledge that the property is deeded in their name and that they have authority. NSAC gives local churches wide authority to buy and to sell property as long as they're using the assets for the purposes of the hierarchical organization. We also think the case law is very much in support of this case. Clay and Trinity on the parents' church's construction of its bylaws. We have no trouble with the York case, we believe, that opposing counsel referred to. York said explicitly that courts had to defer to a church hierarchy's interpretation of its own rules. It's true that York ruled for the local church, but York did so for two reasons, neither of which is present here. First, the hierarchy conceded that the local church was allowed to disaffiliate and take the property with them. This is page 619 of the opinion. The court noted the, quote, Appellee's concession that the local church had the right to withdraw from the denomination. And second, the church rule giving the parent church a property right over the local church only happened after the local church joined. Overture A, which was the basis for the national church's claim, was passed in May 1981 when the local church had withdrawn back in October 1980. And that's not the case here. But again, even if this court were to reject any claims for deference, we don't believe the district court's decision can stand. And at that point, it becomes a factual question, you know, the plain and ordinary meaning of the word defunct, which is not defined in the bylaws, and we believe this would be a proper case for amended reconsideration for further proceedings. Thank you, Your Honor. Thank you. The court will take this matter under advisement, and the court stands in recess.